## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

STACEY L. HEMPHILL,                    )
                                       )
                    Plaintiff,         )
                                       )
vs.                                    )         Case No. CIV-07-817-HE
                                       )
JUSTIN JONES, et al.,                  )
                                       )
                    Defendants.        )

## REPORT AND RECOMMENDATION

Stacey L. Hemphill, a pro se prison inmate in the custody of the Oklahoma Department of Corrections ("DOC"), has brought this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that various prison officials and employees have violated his constitutional guarantees [Doc. No. 7].[1] Plaintiff summarizes his claims in the following manner:

> The Plaintiff, Stacey L. Hemphill a.k.a "Apocalypse God Allah", has been a member of the "Five % Nation of Islam" also known as "The Nation of Gods and Earths" (Islamic Nation) which he joined almost (11) eleven years ago. Plaintiff asserts that since his confinement in the Oklahoma Department of Corrections he has been denied receipt of "Nation" materials, literature, including the groups 5 % Nation texts, has been banned from having formal

---

[1]Plaintiff initiated this action through his original complaint [Doc. No. 1] which he signed and dated while confined at the prison facility where the alleged violations arose, the Oklahoma State Reformatory. *Id.* at sequential p. 17. He filed his amended complaint [Doc. No. 7] the following month. "An amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kansas Dept. of Corrections*, 160 Fed. Appx. 730, 734, 2005 WL 3515716 at *1 (10th Cir.2005)(unpublished op.) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991)). The undersigned granted a subsequent amendment request to add Tim Wilkins as a named Defendant [Doc. Nos. 15 and 21].

gatherings with its members.  Plaintiff contends that all defendants knew and should have known they were clearly violating Plaintiffs garanteed [sic] rights and that Defendants have retaliated against him, denied him access to the courts, denied him free exercise of his religious path to God, and that D.O.C. officials have shown favor to certain religious and non-religious beliefs and study groups over his in violation of the 1st Amendment to the U.S. Constitution."

*Id.* at sequential[2] p. 3.  The matter was referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). In accordance with the undersigned's order and with *Martinez v. Aaron*, 570 F. 2d 317 (10th Cir. 1978), a Special Report was filed by the DOC [Doc. Nos. 14 and 45]. The Defendants also filed a motion seeking dismissal or, alternatively, summary judgment on January 8, 2008 [Doc. No. 47].  For the reasons which follow, it is recommended that Defendants' motion, which is construed by the undersigned as a motion for summary judgment, be granted.

## Additional Procedural Background

After receiving a requested extension of time to respond to Defendants' dispositive motion [Doc. Nos. 50 and 51], Plaintiff filed what he termed a "Notice of Exigent Circumstances" in which he explained that he had recently been transferred to a different facility but that some of his personal property, including his legal papers, had not been transferred with him [Doc. No. 52].  Accordingly, the undersigned entered a temporary stay with respect to Plaintiff's response to Defendants' dispositive motion and ordered Defendant

---

[2]Throughout this report, the undersigned has, to the extent possible, cited to documents by their sequential page number which conforms to the number assigned by this court's electronic case filing system.

Justin Jones, DOC Director, to show cause as to why Plaintiff was not being provided with his legal documentation [Doc. No. 53].   Satisfied with Defendant Jones's subsequent response and statement that "[a]s of February 14, 2008, Plaintiff has had full access to his personal property again[,]" [Doc. No. 57, sequential p. 2], the undersigned established March 25, 2008, as a new deadline for Plaintiff's response [Doc. No. 58].   Then, on March 3, 2008, Plaintiff filed a notice stating that he had not, in fact, received all of his papers and was still missing certain legal materials [Doc. No. 60].   Plaintiff's response time was again extended [Doc. Nos. 62 and 63] and on April 14, 2008, Plaintiff filed his brief in opposition to Defendants' motion [Doc. No. 66].   Plaintiff filed a second response brief on June 12, 2008 [Doc. No. 71].[3]

In this second response brief, Plaintiff acknowledged that he had received all of his legal materials pertaining to this case by May 23, 2008.   *Id.* at sequential p. 32. Consequently, the undersigned is satisfied that Plaintiff had complete access to his evidentiary materials prior to making his final response to Defendants' dispositive motion.[4]

---

[3]Because Plaintiff's motion [Doc. No. 67] seeking leave to amend his objections was mooted by his filing of those amended objections [Doc. No. 71], the undersigned is recommending that Plaintiff's motion [Doc. No. 67] be denied as moot.

[4]In this connection, in the same paragraph in which he acknowledges receipt of all of his documents, Plaintiff appears to argue that his lack of access to these documents is connected to his claims in this case [Doc. No. 71, sequential p. 32].   Any such additional claims are not, however, encompassed by Plaintiff's amended complaint and, other than to assure herself that Plaintiff had full access to his documents before making a final response to Defendants' dispositive motion, the undersigned has disregarded Plaintiff's arguments and administrative filings pertaining to his legal documents since his transfer from the Oklahoma State Reformatory in Granite.

3

**Other Pending Motions**

Also pending for determination is Plaintiff's motion for default judgment [Doc. No. 72]. Plaintiff grounds this request on Defendants' alleged failure to respond to Plaintiff's so-called "Notice of Adjudicated Facts" which was filed on May 19, 2008, pursuant to Rule 201 of the Federal Rules of Evidence [Doc. No. 69]. It is recommended that Plaintiff's motion for default judgment [Doc. No. 72] be denied. Defendants – against whom a prerequisite entry of default has not been entered, *see* Fed. R. Civ. P. 55(a) – are actively defending this action and are not in default. Nonetheless, while mislabeled as a request that this court take judicial notice of certain undisputed facts, Plaintiff's notice was directed to Defendants and could, with liberal construction, be construed as requests for admission. Failure to respond to such requests, however, does not support a default judgment against these Defendants.

The undersigned is recommending in this report that summary judgment be entered against Plaintiff, a recommendation grounded on Plaintiff's failure to properly exhaust his administrative remedies. Should the undersigned's recommendation be rejected, Plaintiff will have the opportunity to recast his admission requests in proper form, and Defendants will be required to respond. In the meantime, however, and for purposes of the pending dispositive motion, the undersigned has carefully reviewed Plaintiff's requested admissions and has considered any which bear on Plaintiff's exhaustion efforts or upon any of the issues addressed below. Because Defendants are not in default in this action, it is recommended that Plaintiff's motion seeking default judgment [Doc. No. 72] be denied.

In addition, shortly after Defendants filed their dispositive motion, Plaintiff moved for the appointment of counsel [Doc. No. 49], stating, in part, that counsel was required due to the complex nature of this case and due to the conflicting evidence likely to be presented at trial. Apart from the fact that Plaintiff's request for counsel may become moot in light of the undersigned's recommendation that summary judgment be entered against Plaintiff, upon careful consideration of the circumstances of Plaintiff's case bearing on the need for counsel, see *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995), the undersigned finds that, contrary to Plaintiff's claim, the legal issues in this matter, and at this stage of the proceedings, are not complex. Should the undersigned's recommendation be rejected and the case proceed, Plaintiff's request for counsel may be reasserted. Consequently, it is recommended that Plaintiff's motion for the appointment of counsel [Doc. No. 49] be denied both as moot and upon its merits.

## Standard of Review - Summary Judgment

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Calhoun v. Gaines*, 982 F.2d 1470, 1472 (10th Cir. 1992). A *Martinez* or Special Report is customarily treated as an affidavit, as is the complaint, if it alleges facts based upon Plaintiff's personal knowledge and has been signed under the penalty of perjury, which is the case here. *Hall v. Bellmon,* 935

5

F.2d 1106, 1111 (10th Cir. 1991). Material factual disputes cannot be resolved through summary judgment based on conflicting affidavits. *Id.*  A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving] party." *Id.* at 252.  Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### Affirmative Defense

Additionally, when an affirmative defense – such as the failure to exhaust administrative remedies[5] – is asserted in a motion for summary judgment, defendants "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir. 1997).  "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed

---

[5]*See* Doc. No. 47, sequential p. 27. Although Defendants effectively assert failure to exhaust as an affirmative defense, they nonetheless argue that Plaintiff bears the burden of establishing exhaustion. *Id.* at p. 30. This, of course, has not been the case since the Supreme Court's decision in *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007).  Despite the undersigned's concern with the quality of Defendants' briefing, the undersigned is satisfied that Defendants' error was undoubtedly the result of cutting and pasting from another brief and in no way diminishes the fact that Defendants have met their burden of proof on the evidence before the court.

material fact." *Id.* "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

## Analysis

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") requires that a prisoner exhaust *all* available administrative remedies before resorting to a § 1983 action in federal court. Specifically, 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id*. In construing this legislation, the United States Supreme Court has determined "that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 918 - 919 (2007). A prisoner, such as Plaintiff, successfully exhausts administrative remedies by completing the administrative review process established by the prison grievance procedure. *Id.* 127 S.Ct. at 922. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary,* 511 F.3d 1109, 1112 (10th Cir. 2007).

Courts, however, "are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007).

Defendants maintain[6] and Plaintiff does not dispute that he was required to exhaust his administrative remedies pursuant to DOC grievance procedures, OP-090124. *See* Inmate/Offender Grievance Process, OP-090124 [Doc. No. 45, Attachment 48]. This process requires an initial, informal attempt to resolve a complaint by talking with the case manager, supervising employee or other appropriate staff. *Id.* at IV(A). If the matter remains unresolved, the inmate must then submit a written "Request to Staff," briefly but specifically describing his complaint. *Id.* at IV(B)(1). Should the informal attempts at resolution fail, the inmate's next step is submission of a "Inmate/Offender Grievance Report Form" along with the Request to Staff form and response. *Id.* at V(A). If the inmate does not follow the procedural instructions, the grievance may be returned unanswered for proper completion and, if allowed, the inmate may re-submit the grievance within ten days. *Id.* at V(A)(7). An unfavorable response to the grievance may then be appealed to the administrative review authority or chief medical officer, as appropriate. *Id.* at VII(B). The ultimate ruling of the administrative review authority or chief medical officer concludes the administrative process available to an inmate through the DOC. *Id.* at VII(D).

---

[6]Because the undersigned finds that Defendants have established as a matter of law that Plaintiff did not exhaust his administrative remedies, Defendant's remaining contentions in seeking summary judgment are not addressed.

Thus, pursuant to the foregoing, in order to have fully exhausted his administrative remedies it was not enough for Plaintiff to submit a request to staff in an attempt to resolve a dispute.[7]  He was required to properly submit a grievance and to then appeal any unfavorable response which he received.  Accordingly, instead of undertaking a claim-by-claim analysis to determine exhaustion, the undersigned has proceeded under the theory that the only claims which could be exhausted – and thus validly asserted – are those which were properly grieved.  To this end, the undersigned has considered the grievances referenced by Defendants as well as any other grievance included in the voluminous documentation submitted by Plaintiff in his filings in this matter.

**<u>Grievances Referenced by Defendants</u>**

Included in Defendants' statement of undisputed facts is their affirmative defense that "Plaintiff has not exhausted his administrative remedies on any of his claims because he has never properly filed any grievances." [Doc. No. 47, sequential p. 12].  In both of his objections to the summary judgment motion, Plaintiff has, in turn, proffered as a disputed fact that "Plaintiff has exhausted his administrative remedies, which were available." [Doc. No. 66, sequential p. 2 and Doc. No. 71, sequential p. 12]. Defendants' Special Report details and attaches the grievances which they state Plaintiff filed while housed at the Oklahoma State Reformatory.  As to the majority of these grievances, Defendants contend that Plaintiff

---

[7]A review of the documents referenced by and attached to Plaintiff's Notice of Adjudicated Facts reveals that Plaintiff filed numerous requests to staff but very few follow-up grievances [Doc. No. 69].

failed to follow proper procedure and, as a consequence, his grievances were returned [Doc.

No. 45, sequential p. 33]. In support of this defense, Defendants' Special Report provides

as follows:

> On January 30, 2007, plaintiff submitted a grievance, logged as OSR-07-007
> and categorized as a "complaint against staff". Plaintiff failed to attach proof
> of seeking an informal resolution to this issue and the grievance was returned
> to him without a response. (Attachment 67) On March 27, 2007, plaintiff
> submitted a grievance logged as OSR-07-022, alleging errors within the
> "disciplinary process", however he failed to attach proof of seeking an
> informal resolution to this issue and the grievance was returned to him without
> a response. (Attachment 68) On May 15, 2007, plaintiff submitted another
> grievance logged as OSR-07-032, regarding the denial of a requested activity,
> however he failed to sign the grievance with his legal name[8] and the grievance
> was returned to him without a response . . . . (Attachment 69) On May 16,
> 2007, plaintiff submitted yet another grievance, logged as OSR-07-033,
> pertaining to the disciplinary, however he again failed to sign his grievance
> with his legal name and the grievance was returned to him without a response
> . . . . (Attachment 70) On June 4, 2007, plaintiff resubmitted grievances OSR-
> 07-032 & 07-032 [sic] without curing the defects. . . .

*Id.* at sequential pp.11-12.

There is no evidence that Plaintiff attempted to correct the identified deficiencies. He

neither re-submitted the first two grievances with the requisite documentation nor did he re-

submit the last two grievances utilizing his legal name in the space provided at the beginning

of the form instead of "Hemphill" a.k.a. Apokalypse Allah or "Hemphill, Stacey" a.k.a

Apokalypse God Allah. Inmates are required not only "to *properly* complete the grievance

---

[8]In addition to objecting to Plaintiff's signature, Warden Franklin objected to
Plaintiff's entry of his name as "Hemphill" a.k.a. Apokalypse Allah or "Hemphill, Stacey"
a.k.a Apokalypse God Allah [Doc. No. 45, Attachment 69, sequential p. 4 and Attachment
70, sequential p. 4].

process" but, in addition, "to *correct deficiencies*." *Jernigan,* 304 F.3d at 1032 (emphasis in original). Plaintiff's sole argument in connection with these grievances is that, "Prior to Plaintiff utilizing the DOC prison grievance system to assert his constitutional rights Defendants did not refuse any requests to staffs, grievances or any other documents wherein Plaintiff utilized his Islamic attribute (name) as his 'distinguishing signature' in conjunction with his surname." [Doc. No. 71, sequential p. 32]. As proof of this claim, Plaintiff cites to his Exhibit No. 33 which consists of two request to staff forms – neither of which contains the a.k.a. language in the name field, – a request for reimbursement of legal fees where, once again, no a.k.a. language is used, and, finally, an envelope addressed to "Hemphill/Shabazz/216717/A-3-11." *Id.* at Exhibit 33. None of this evidence submitted by Plaintiff establishes that he properly completed these grievances nor that he was – as he claims in conclusory fashion – hindered in his exhaustion efforts. *Id.* at sequential p.35. Accordingly, because Plaintiff did not follow the proper grievance procedure in connection with these grievances, these grievances cannot support any claim which Plaintiff has attempted to assert.

As to the other grievance referenced in the Special Report, Defendants offer the following in support of their affirmative claim that Plaintiff failed to exhaust his administrative remedies:

> On August 29, 2006, plaintiff submitted a grievance, logged as OSR-06-141, to Warden Franklin alleging Defendant Bethea refused his formal request to view the "Battles v. Anderson" supplemental correspondence. An investigation showed plaintiff was not denied the opportunity to view these

> documents, but that he refused to accept Ms. Bethea's requirement of viewing
> the documents in her office. Relief was denied.  (Attachment 72)

[Doc. No. 45, sequential p. 21].  A review of Defendants' Attachment 72 shows that the

denial of relief was the final notation of administrative action.  *Id.* at Attachment 72,

sequential p. 6.  There is no indication in the documentation that Plaintiff appealed the denial

as required by grievance procedure.  *See* Inmate/Offender Grievance Process, OP-090124

(VII)(B) and (D) [Doc. No. 45, Attachment 48].  In his objections [Doc. Nos. 66 and 71] to

Defendants' dispositive motion, Plaintiff presents neither argument nor evidence that he did,

in fact, complete such an appeal.

Nonetheless, in reviewing Plaintiff's Notice of Adjudicated Facts – the document

upon which Plaintiff grounded his default judgment request – the undersigned reviewed a

request to staff form addressed to Warden Eric Franklin in which Plaintiff maintains that law

library supervisor Defendant Bethea denied him the additional library time he requested in

order to prepare his appeal from the denial of grievance OSR-06-141[Doc. No. 69,

Attachment 16].  There is, however, no indication – such as a file stamp – that the request

was received in the warden's office nor does it appear that Plaintiff has submitted the request

to staff form which Defendant Bethea allegedly returned to him unanswered.

Moreover, while Plaintiff alleges in general fashion that "[o]n several occasions, Ms.

Bethea, hindered Plaintiffs access [to courts] by arguing against his deadlines and causing

actual injury that would force the Plaintiff to miss filing his non-frivolous complaint[,]"

[Doc. No. 7, sequential p. 11], Plaintiff has not identified any actual injury resulting from

Defendant Bethea's alleged refusal to provide him with "the *Battles v. Anderson* supplemental correspondence," [Doc. No. 45, Attachment 72], the subject of grievance OSR-06-141.  While Plaintiff enjoys the fundamental right of access to the courts, to state a claim for deprivation of this right he must demonstrate an actual injury that "hindered his efforts to pursue a legal claim."  *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that an inmate alleging the denial of meaningful court access must establish not only the inadequacy of legal materials available to him, but also that the alleged shortcomings hindered his efforts to pursue a legal claim).  Plaintiff has not established that he was hindered in his efforts to file a complaint while incarcerated at the Oklahoma State Reformatory due to his alleged lack of access to the *Battles* materials.  Plaintiff, in fact, successfully filed the instant action while still incarcerated at the Oklahoma State Reformatory.[9]  *See supra* note 1.  Consequently, even if Plaintiff was hindered in his ability to perfect a final appeal from the denial of grievance OSR-06-141, he has failed to establish the requisite injury from the alleged denial of the *Battles* material, and summary judgment is, consequently, warranted.

**Grievances Referenced by Plaintiff**

---

[9]None of Plaintiff's filings identify any complaint which Plaintiff was unable to file or complete as a result of the alleged denial of the *Battles* materials.

A review of Plaintiff's arguments and documentation[10] reveals grievances which were not referenced in Defendants' Special Report.  With respect to the first of these grievances, Plaintiff states in his final objection to Defendants' dispositive motion that he submitted a grievance on December 30, 2006 [Doc. No. 71, sequential p. 31, citing Exhibit 5, p. 5].  He further explains what then occurred:

> When there was no response coming from the facility head, in OSR, Plaintiff then submitted a grievance to the ODOC, exhibit '5', pg. 6 of 7, on March 9, 2006', during which time a response was provided which stated that there was no grievance reached by the OSR Facility, and that Plaintiff would have to re-submit a grievance to the OSR Facility.[11]  *Ross v. County of Bernalillo,* 365 F. 3d 1181, 1186-87 (10th Cir. 2004) ("When there is no possibility of any further relief, the prisoners duty to exhaust available administrative remedies is complete").

*Id.* at sequential p.31.  Thus, Plaintiff's own evidence establishes that he began the grievance process but, rather than resubmitting the grievance as he was clearly authorized to do by the DOC Director's Designee Debbie L. Morton, *id.* at Exhibit 5, p. 7, in order to continue the process, he argues that there was no possibility of any further relief.  Because Plaintiff's own

---

[10]Because Plaintiff has suggested in a conclusory manner that Defendants hindered his ability to pursue his administrative grievances, the undersigned has also reviewed Plaintiff's submissions to determine whether Defendants failed to respond to a request to staff from Plaintiff.  As discussed *supra* in connection with the request to staff [Doc. No. 69, Attachment 16] allegedly submitted to Warden Franklin, there is no indication – through a file stamp which appears on other requests submitted to the office of the warden, *see id.* Attachment 9, 10, 41, and 45, – that such a request was ever submitted and received.  Two other unanswered requests were located, neither of which was a request from Plaintiff but were, instead, requests from another inmate [Doc. No. 69, Attachments 5 and 24].

[11]The grievance submitted to the administrative review authority "may assert only that the inmate's grievance was not answered."  *See* Inmate/Offender Grievance Process, OP-090124 (V)(C)(4) [Doc. No. 45, Attachment 48].

submission demonstrates that other relief was available had he elected to pursue it, the evidence establishes that Plaintiff once again failed to properly file a grievance and, consequently, has not exhausted his administrative remedies as to any claim asserted in this grievance. *See Hoover v. West,* 93 Fed. Appx. 177, 180 (10th Cir. Feb. 19, 2004) (unpublished op.) (where inmate was given the opportunity to cure a deficiency and failed to do so, dismissal for failure to exhaust was proper).

Other grievance material included among Plaintiff's filings relates to the grievance restrictions imposed upon Plaintiff. A grievance dated June 8, 2007, was submitted by Plaintiff to Warden Franklin requesting recognition of the Nation of Gods and Earths / 5% Nation of Islam as a legitimate religion [Doc. No. 69, Attachment 51, p.1]. Plaintiff's evidence shows that Warden Franklin returned the grievance to Plaintiff without a response, advising him that he had been placed on grievance restriction. *Id.* at p. 2.

It is undisputed that Warden Franklin placed Plaintiff on grievance restriction for a twelve month period beginning on June 8, 2007 [Doc. No. 45, Attachment 10]. According to Defendants' Special Report, this occurred after Warden Franklin had advised Plaintiff in connection with the grievances logged as OSR-07-032 and OSR-07-033, *id.* at Attachments 70 and 71, that he could not use an "a.k.a." and advised him to comply with regulations in his future filings. *Id.* at sequential pp. 11 - 12. Again according to the Special Report, "[o]n June 4, 2007, plaintiff resubmitted grievances OSR-07-032 & 07-032 [sic] without curing the defects, and was placed on grievance restriction[.]" *Id.* at sequential p. 12. A grievance restriction, however, does not prohibit an inmate from filing grievances, but instead imposes

15

additional procedural steps. *See* Inmate/Offender Grievance Process, OP-090124 (IX)(B)(2) [Doc. No. 45, Attachment 48].  Plaintiff demonstrated his familiarity with this process in his appeal from his grievance restriction placement to the DOC [Doc. No. 71, Exhibit 32].  There is no evidence and Plaintiff does not argue, however, that he resubmitted his June 8, 2007, grievance in conformity with these requirements. Because Plaintiff did not follow the prescribed grievance procedure, he did not exhaust his administrative remedies as to this claim.

Moreover, the grievance restriction imposed upon Plaintiff did not prevent him from pursuing this or any other claim and, consequently, did not restrict his first amendment right to bring a properly grieved claim before this or any other court.  *See generally Smith v. Maschner,* 899 F.2d 940, 947 (10th Cir. 1990).  Nor do prison grievance procedures create a protected liberty interest and, accordingly, do not implicate Plaintiff's due process rights. *See Murray v. Albany Board of County Commissioners,* No. 99-8025, 2000 WL 472842, at *2 (10th Cir. Apr. 20, 2000) (unpublished op.) ("[P]rison grievance procedures do not 'give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment.") (citation omitted)).

### Plaintiff's Misconduct Proceedings

Plaintiff makes numerous claims relating to a misconduct proceeding brought against him and to his appeal thereof, alleging that prison officials violated various of his

constitutional rights in connection with the proceeding.[12] Plaintiff seeks monetary, injunctive, and declaratory relief.  Because, as the foregoing discussion demonstrates, Plaintiff did not properly file *any* grievance while at the Oklahoma State Reformatory, Plaintiff clearly did not exhaust any administrative remedies as to any alleged constitutional violations arising from his misconduct proceedings.  In any event, Plaintiff's claim for damages for alleged due process violations in connection with the misconduct proceeding is not cognizable if a judgment in favor of the Plaintiff would necessarily imply the invalidity of his prison disciplinary conviction unless Plaintiff first demonstrates that the conviction has been invalidated.  *See Edwards v. Balisok,* 520 U.S. 641 (1997).  No such showing has been made here.  Summary judgment is appropriate as to any claim related to Plaintiff's misconduct proceedings and subsequent appeal.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

It is the recommendation of the undersigned Magistrate Judge that Defendants' motion for summary judgment [Doc. No. 47] be granted.  It is likewise recommended that Plaintiff's motion seeking leave to amend his objections [Doc. No. 67] be denied as moot; that Plaintiff's motion for default judgment [Doc. No. 72]  be denied and, that Plaintiff's motion for appointment of counsel be denied on the grounds of mootness as well as on the merits [Doc. No. 49].

---

[12]Defendants' Special Report includes documentation [Doc. No. 45, Attachment 61] relating to the misconduct appeal filed by Plaintiff.

The parties are advised of their right to file an objection to the Report and Recommendation with the Clerk of this Court by the 29th day of September, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to the Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

IT IS SO ORDERED this 8th day of September, 2008.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE